IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GOODMAN/FRIEDMAN, LLC,

               Plaintiff,

      v.                             Case No. 22 C 946

CBD RESTAURANT CORP., d/b/a      Judge Harry D. Leinenweber
CORNER BAKERY CAFE,

               Defendant.

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

This case arises out of a Retail Lease Agreement between Goodman Friedman LLC ("Landlord") and CBD Restaurant Corp., d/b/a Corner Bakery Café ("Tenant"). Landlord is the owner of the former Goodman Theatre building located in downtown Chicago. Tenant operates a bakery/restaurant on the premises. Under the Lease, Tenant is authorized to produce items for consumption on the premises or "to-go" for consumption off the premises.

The Lease Agreement was executed in 2000, and has been renewed through September 2026, by Defendant exercising two five-year options. The lease was amended in March 2020 as a result of the Covid-19 pandemic. The amendment provided for a three-month rent abatement, conditioned, however, on no default which would make the amount abated due and payable. (Compl. Ex. 4.)

The Defendant did default, and in December 2020, Plaintiff sued Defendant seeking damages for unpaid rent and costs. (Compl. ¶ 10.) The parties settled the suit in January 2021. The terms were memorialized in a Second Amendment to the lease. Its terms extended the lease through the final three months of 2026, required Defendant to make a security deposit, and provided for an adjustment and deferral of base rent due to the pandemic. The suit was dismissed without prejudice. Both amendments to the original Retail Lease Agreement specifically stated there were amendments to the original retail lease.

Unfortunately, Defendant failed to pay rent on time as required by the Second Lease Amendment, so on February 8, 2022, Plaintiff served Defendant with a Landlord's 10-day notice of rent due provided for by state law. (Compl. Ex. 5.) The notice provided if the balance of rent due was not paid within the ten days, the Landlord would terminate the lease. Defendant failed to make the payment so on February 22, 2022, Plaintiff filed this suit seeking unpaid rent, costs, and attorney's fees. Plaintiff has since amended the Complaint to also seek possession.

Defendant's Answer raised a *force majeure* as a defense and a Counterclaim alleging a violation of an exclusivity clause in the Retail Lease Agreement. According to the Counterclaim, Plaintiff entered into a lease agreement with Petterinos to operate a table

- 2 -

service Italian restaurant, but on February 15, 2022, while the Lease was in effect, allowed it to open a "to-go" service, with a separate entrance serving identical menu items as sold by Defendant. Defendant does not contend that Plaintiff did not have a right to lease to Petterinos as a sit-down restaurant, but it does contend that allowing Petterinos to operate a separate "to-go" service does violate the Lease Agreement. Moreover, Petterinos to-go service included all of the items sold by Defendant mentioned in the exclusivity cause. Plaintiff's Answer contends that Petterinos to-go service does not violate the Lease because it is an insignificant portion of its business which is an Italian sit-down restaurant.

While this suit was pending, Plaintiff demanded that Defendant make "use and occupancy payments" for the months of May through December 2022," pursuant to a state law. The Court granted the demand and Defendant did make those payments but has not made any additional rental payments after December 2022. Defendant remains in possession of the leased premises.

The parties have filed Cross-Motions for Summary Judgment. Plaintiff's Motion is straight forward: the Defendant entered into a lease agreement with Plaintiff and Defendant breached the lease by failing to make the required rental payment and other costs. Defendant claims a *force majeure* as an affirmative defense

- 3 -

to deny summary judgment.  Defendant's Cross-Motion is based on
the alleged violation of the lease's exclusivity clause, which it
contends is a material breach warranting it summary judgment.
Plaintiff's response states that the pandemic and lockdown did not
constitute a *force majeure* event and even if it did, the parties
on two occasions compromised the issue through rent abatements.

## II.  DISCUSSION

### A.  Plaintiff's Motion

With respect to *force majeure,* the Defendant is correct that
courts in this district have concluded that, if the lockdown
prevented a tenant from utilizing the premises for the use
contemplated by the lease, the tenant is entitled to rent
deferrals.  *See, e.g., Morgan Street Partners, LLC, v. Chicago
Climbing Gym Co. LLC,* 2022 WL 602893 (N.D. Ill. April 3, 2023).
However, Plaintiff is correct that the Defendant's acceptance of
a rent abatement is an obvious compromise of its right to rental
deferral.  The two Amendments to the Lease are executory accords,
*i.e.,* they do not substitute for the original agreement which
remains in full force, except as modified by amendment.  *Real
Estate Value Company v. USAir, Inc.,* 979 F.Supp. 731 (ND. Ill.
1997).  The Amendments to the Lease by its very terms indicate
that they are amendments to the original lease and do not act as
substitutes for the original lease agreement.  Thus, the failure

- 4 -

of Defendant to live up to is obligations arising from the Lease amendments and the original lease entitled Plaintiff to summary judgment on its Complaint. The damages will be the rent due plus all expenses for which the tenant is responsible.

### B. Defendant's Counterclaim

The original Lease in Section 42.1, intitled "Exclusive Use," states as follows:

> Landlord shall not sell or lease space in the building to another person or entity to operate a non-table service restaurant selling baked goods, sandwiches, salads or pizza or a combination of two or more of the proceeding items, or to operate a table service restaurant selling such items as its primary concept.

Defendant contends that Plaintiff violated this provision when it permitted its tenant, Petterinos, to open the to-go restaurant in the same premises where Defendant operates its restaurant. In response to the argument that violation of the lease through non-payment of rent voided the exclusivity provision, Defendant asserts that the lease was still in effect when Plaintiff served the Landlord's Ten-Day Notice on February 10, 2022, so that the exclusivity provision was in effect when Petterinos opened its "to go" restaurant on February 15, 2023. Plaintiff, in response, argues that Defendant fails to account for the "as its primary concept" clause in the exclusivity provision. It supports this argument with an affidavit of a Petterinos manager that avers that its primary concept is an Italian sit-down restaurant, and the to-go business constitutes no more than 5% of its revenues.

The Defendant has attached a photograph of the separate to-go entrance and a copy of Petterinos to-go menu to its brief. It is obvious to the Court that the business is operated separate from the sit-down restaurant. It is a non-table to-go service entity, and its menu parrots the specific items proscribed in the exclusivity provision, *i.e.,* "baked goods, sandwiches, salads, or pizza."

However, a tenant's obligation to pay rent is generally considered separate and independent of the landlord's obligation regarding the condition of the premises. *See Greggs USA, Inc. v. 400 E. Pro. Assocs.*, LP, 198 N.E.3d 1062, 1070 (Ill. App. Ct. 2021) (citing *Zion Industries, Inc. v. Loy*, 361 N.E.2d 605, 608 (Ill. App. Ct. 1977)). So long as the tenant remains in possession, there can be no constructive eviction, and the obligation to pay rent continues. *Zion Industries*, 361 N.E.2d at 608. There is no provision in the lease, and Defendant has cited none that would permit a tenant to remain in possession and not pay rent. Illinois law does not permit it without specific provision allowing it, and there is no authority in Illinois law that would permit it without such a provision in the lease. *McArdle v. Courson,* 82 Ill. App 3d 123 (4th Dist. 2002). This does not mean of course that the tenant is without recourse for the landlord's breach. Under Illinois law, a tenant may seek damages for violation of the lease. The measure of damages for the landlord's breach of a covenant that affects the tenant's business has been held to be the difference between the rental value of the lease with the exclusivity provision and the value of a lease without such a provision. *Zion Industries*, 361 N.E.2d at 610.

- 6 -

Summary judgment is granted on the Counterclaim with damages to be set at a later date.

### III.   <u>CONCLUSION</u>

For the reasons stated herein, summary judgment (Dkt. No. 37) is granted in favor of Plaintiff on the Complaint.  Plaintiff is requested to file with the Court the total amount claimed to be due from Defendant as a result of the breach of the obligation to pay rent and costs. Summary judgment (Dkt. No. 41) is granted in favor of Defendant on the Counterclaim with damages to be set at a later date.

**IT IS SO ORDERED.**

_____
     Harry D. Leinenweber, Judge
     United States District Court

Dated: 7/21/2023